No. 12584

IN THE SUPREME COURT OF THE STATE OF MONTANA

1974

STATE OF MONTANA,

Plaintiff and Appellant,

-vs-

JERRY A. AMOR,

Defendant and Respondent.

Appeal from: District Court of the Twelfth Judicial District, Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellant:

Hon. Robert L. Woodahl, Attorney General, Helena, Montana
J. C. Weingartner, Deputy Attorney General, argued, Helena, Montana
Paul C. Bunn, County Attorney, Chester, Montana
Donald Marble argued, Deputy County Attorney, Chester, Montana

For Respondent:

Morrison, Ettien and Barron, Havre, Montana
Robert D. Morrison argued, Havre, Montana

Submitted: February 28, 1974

Decided: APR - 2 1974

Filed: APR - 2 1974

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The State of Montana brings this appeal from an order of the district court of Liberty County suppressing certain evidence the State sought to introduce in the trial of defendant, Jerry A. Amor, who is charged with burglary. The evidence in question is a scrap of cardboard upon which is written a list of drugs and corresponding amounts, which was seized from Amor's automobile by a member of the Liberty County sheriff's office.

On March 13, 1973, at about 9:45 p.m., the Liberty County sheriff's office was notified by employees of the Chester Professional Clinic that the clinic had just been burglarized. During the investigation at about 11:40 p.m., attention was centered on a lone automobile parked in a church parking lot a short distance from the clinic. Looking through the windows, officers were able to see the keys in the ignition, a beer can and what appeared to be a box of rifle ammunition on the seat. A license plate check revealed that the car was registered to defendant Amor, who, the officers learned, matched the general description of the burglar given by the clinic employees and who was then on parole from a conviction and sentence for rape. The officers testified that they were aware that parolees are not permitted to possess weapons.

A search was next made of the church and no one was found inside. The record indicates that a meeting had been held at the church earlier that evening. The officers then searched the Amor car and discovered the drug list in the glove compartment. The drug list was returned and the car driven to the undersheriff's private garage, where it was kept overnight. The next morning the car was taken to the Chester Motor's Garage, and while there an officer entered the automobile and took the drug list from the car's glove compartment.

It is undisputed that neither the March 13th or 14th searches

of Amor's automobile were made pursuant to a warrant, or consent given by Amor, or were incident to an arrest of Amor.

The sole issue assigned by the State on this appeal is whether the district court erred in granting the defendant's motion to suppress the evidence.

The state contends on this appeal that the "mobile premises--probable cause" warrantless search exception applied by this Court in State v. Speilmann and Christensen, ____Mont.____, 516 P.2d 617, 30 St.Rep. 1036, is applicable in the present case. In those cases, and in the various federal cases cited and relied upon therein, the warrantless search exception was predicated upon the existence of probable cause coupled with exigent circumstances. In the instant case the presence of the ammunition box in the automobile and the knowledge that Amor, the registered owner, was a parolee who matched the general description of the burglar were facts contributory to the existence of probable cause, not exigent circumstances. In the above cited cases exigent circumstances existed because there was a fleeting opportunity to search an occupied automobile which had been stopped while traveling on a highway. In no case may the existence of exigent circumstances be predicated upon the mere fact that the object of the search was an automobile. In the case of Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L Ed 2d 564, 580, 583, the majority opinion stated:

> "The word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away and disappears. And surely there is nothing in this case to invoke the meaning and purpose of the rule of Carroll v. United States (267 U.S. 132, 45 S.Ct. 280)--no alerted criminal bent on flight, no fleeting opportunity on an open highway after a hazardous chase, no contraband or stolen goods or weapons, no confederates waiting to move the evidence, not even the inconvenience of a special police detail to guard the immobilized automobile. In short, by no possible stretch of the legal imagination can this be made into a case where 'it was not practicable to secure a warrant,' Carroll, supra, at 153, 69 L Ed at 551,

- 3 -

39 ALR 790, and the 'automobile exception,' despite its label, is simply irrelevant.

Likewise in the instant case, we find that it was both practicable and mandatory that the officers obtain a valid warrant before conducting a search of Amor's parked, unoccupied automobile.

The State also contends that the drug list seized from the glove compartment of Amor's automobile comes under the so-called "plain view" exception. This contention erroneously presupposes that the officers had justification for their intrusion into Amor's automobile and its glove compartment when they came upon the drug list. Quoting again from the majority opinion in Coolidge:

> "What the 'plain view' cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification--whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused--and permits the warrantless seizure. * * *"

Finally, the State contends that Amor's automobile was searched as part of a "standard inventory procedure" of an impounded abandoned vehicle. The record shows that the officers were aware that the automobile belonged to Amor, who was their prime suspect in a burglary. Sheriff Terry Stoppa testified:

> "Q. I am interested in this policy of handling abandoned automobiles. Did you take this automobile in your possession because you thought it was abandoned? A. No. Not primarily.
>
> "Q. You didn't think it was abandoned, did you? A. We weren't sure. We thought--
>
> "Q. It had the keys in it, didn't it? A. Yes.
>
> "Q. And did you make, try to determine how long it has been parked there? A. Yes.
>
> "Q. And what information did you dig up in that

- 4 -

regard? A. It had been parked there for some time before we had arrived there to check it out.

"Q. But that was in terms of hours, not days or months or weeks, isn't that right? A. Yes.

We find, as did the district court, that the abandoned vehicle contention is contrary to the testimony of the law enforcement officers and is supported by none of the facts in the record.

The order of the district court is affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices